UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

CRIMINAL ACTION NO. 6:16-CR-12-GFVT-EBA
CRIMINAL ACTION NO. 6:16-CR-17-GFVT-EBA
CRIMINAL ACTION NO. 6:16-CR-18-GFVT-EBA

UNITED STATES OF AMERICA,                                                              PLAINTIFF,

V.                         **MAGISTRATE JUDGE'S**
                        **REPORT AND RECOMMENDATION**

SANTOS HERNANDEZ HERNANDEZ,                                              DEFENDANT.

\*\*\* \*\*\* \*\*\* \*\*\*

## I. INTRODUCTION

The Defendant, Santos H. Hernandez, brings this action pursuant to 28 U.S.C. § 2255 seeking to vacate, set aside, or correct his sentence. [R. 52; R. 24; R. 24]. Consistent with local practice, the matter is before the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the following reasons, the Court recommends that Hernandez's motion be denied.

## II. FACTS AND PROCEDURAL HISTORY

In 2009, Santos H. Hernandez was convicted in two cases from the Eastern District of Tennessee. First, he was charged with aggravated felony for conspiracy to distribute and possession with intent to distribute 500 grams or more of cocaine hydrochloride in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B). Second, he was charged with possession with intent to distribute cocaine hydrochloride in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). [R. 1 at 1 (16-CR-17); R. 1 at 1 (16-CR-18)]. In each case he received a concurrent sentence of 72-months imprisonment, to be followed by a term of supervised release with a special condition that if he

were to be deported, he shall not re-enter the United States without the permission of the Attorney General, and *if he does re-enter*, he shall report to the nearest United States Probation Office within 72 hours of re-entry. [R. 1-2 at 5 (16-CR-17); R. 1-2 at 5 (16-CR-18)]. Following his incarceration, Hernandez was released on supervision and subsequently deported on February 5, 2015.

On January 12, 2016, Hernandez was found in Bell County, in the Eastern District of Kentucky. He was indicted and charged with unlawfully reentering the country subsequent to the commission of an aggravated felony, in violation of 8 U.S.C. § 1326(a) and (b)(2). [R. 1 (16-CR-12)]. In addition, he was charged with violating his conditions of supervised release in each of the two cases arising from the Eastern District of Tennessee. These supervised release matters were transferred from the Eastern District of Tennessee to the Eastern District of Kentucky for resolution. [R. 1 (16-CR-17); R. 1 (16-CR-18)].

Ultimately, Hernandez plead guilty to unlawfully reentering the country subsequent to the commission of an aggravated felony, in violation of 8 U.S.C. § 1326(a) and (b)(2). [R. 26 (16-CR-12); R. 27 (16-CR-12)]. His sentencing on this offense occurred simultaneously with the dispositions of his supervised release violations, charging him with unlawfully reentering the country and failing to report his reentry to the probation office within seventy-two hours. At the sentencing, in the Eastern District of Kentucky, the District Court imposed a sentence of fifteen months of imprisonment for the supervised release violation in each of his two prior cases, to be served concurrently. In addition, he received a sentence—within guidelines— of sixty-four months of imprisonment for unlawful reentry subsequent to the commission of an aggravated felony, to be served consecutively to the sentences imposed on his supervised release violations. Consequently, Hernandez received a total sentence of Seventy-Nine (79) months for his offenses.

Hernandez appealed each case, arguing that his sentence was procedurally unreasonable because the District Court: (1) offered no reasons to support the imposition of consecutive sentences and (2) failed to acknowledge its discretion to impose a concurrent sentence, thereby improperly treating the guidelines as mandatory. [R. 48 at 1-2]. In a five-page order, the Court of Appeals affirmed the sentence imposed by the District Court.

Hernandez has now filed this instant motion to vacate pursuant to 28 U.S.C. § 2255 in each of the three cases. [R. 52]. Specifically, Hernandez contends that his attorney assumed the sentencing guidelines were mandatory. This, Hernandez contends, prevented him from presenting mitigating evidence in the form of a mercy letter, asking the Court to consider his illness and need for medical care as his only reasons for coming back to America. [R. 52 at 4-5]. The matter now stands ripe for review.

### III. STANDARD OF REVIEW

Generally, a prisoner has a statutory right to collaterally attack his guilty plea, conviction or sentence. *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). For a federal prisoner to prevail on a 28 U.S.C. § 2255 claim, he must show that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law nor open to collateral attack, or otherwise must show that there was "a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b).

Put another way, for relief under 28 U.S.C. § 2255, the prisoner must show that: (1) his conviction resulted from an error of constitutional magnitude; (2) his sentence was imposed outside the statutory limits; or (3) an error of fact or law occurred that was so fundamental as to render the entire proceedings invalid. *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003), cert. denied, 540 U.S. 1133 (2004); *see also Moss v. United States*, 323 F.3d 445, 454 (6th

Cir. 2003), cert. denied, 540 U.S. 879 (2003). He must sustain these allegations by a preponderance of the evidence. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (unpublished) ("Defendants seeking to set aside their sentences pursuant to 28 U.S.C. § 2255 have the burden of sustaining their contentions by a preponderance of the evidence."); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). If the prisoner alleges a constitutional error, he must establish by a preponderance of the evidence that the error "had a substantial and injurious effect or influence on the proceedings." *Watson*, 165 F.3d at 488 (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993); *Pough*, 442 F.3d at 964. Alternately, if he alleges a non-constitutional error, he must establish "a fundamental defect which inherently results in a complete miscarriage of justice . . . an error so egregious that it amounts to a violation of due process." *Watson*, 165 F.3d at 488 (citing *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990).

To prevail on an ineffective assistance of counsel claim under Section 2255, the petitioner must prove both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove deficient performance, he must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 687–88. In applying this test, reviewing courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance . . ." *Id.* Second, the petitioner must establish prejudice, by showing there is a reasonable probability that, but for counsel's unprofessional errors, the result of his proceedings would have been different. *Id.* at 694–95. Notably, "[w]hen deciding ineffective-assistance claims, courts need not address both components of the [deficient performance and prejudice] inquiry 'if the defendant makes an insufficient showing on one.'" *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004); *Strickland*, 466 U.S. at 697.

Decisions that "might be considered sound trial strategy" do not constitute ineffective assistance of counsel. *Michel v. Louisiana*, 350 U.S. 91, 101 (1955). While trial counsel's tactical decisions are not completely immune from Sixth Amendment review, they must be particularly egregious before they will provide a basis for relief. *Martin v. Rose*, 744 F.2d 1245, 1249 (6th Cir. 1984). Further, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment." *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 691). "Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

## IV. ANALYSIS

This Court is obligated to broadly construe Defendant's pro se Motion to Vacate, evaluating his arguments according to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). In his motion, Hernandez claims that his attorney either believed the sentencing guidelines were mandatory or lead Hernandez to believe they were mandatory, impeding him from presenting his mitigating evidence. [R. 52 at 4-5]. Had he known the sentencing guidelines were not mandatory he would have submitted a mercy letter asking the Court to consider his illness, pain, and his need for "advanced American medical technology." *Id*. As addressed below, this argument provides Hernandez no relief.

### A. Attorney's Assumption that Guidelines are Mandatory

Hernandez claims that his attorney was ineffective in that he assumed that the guidelines were mandatory. Hernandez argues that this prevented him from presenting his mercy letter or any other mitigating evidence to the Court at his sentencing. However, the record evidence in the

case directly contradicts this unsupported argument, and for this reason Hernandez motion should be denied.

At one time the Federal Sentencing Guidelines were mandatory. However, the United States Supreme Court changed that following its' decision in *United States v. Booker*. 543 U.S. 220, 249-50 (2005). This change ensured that the guidelines system would guide a judge in making sentencing decisions. *Id*. The goal of the sentencing guidelines is to diminish sentencing disparity. *Id*. The decision of imposing a sentence resides with a sentencing judge and the range of the recommended sentence as determined by the guidelines is but one factor a sentencing judge considers in imposing a sentence. *Id*. at 233, 245; *See Chavez-Meza v. United States*, 138 S. Ct. 1959, 1963-1966 (2018); *Koons v. United States*, 138 S. Ct. 1783, 1789-1790 (2018). In this case, the record reflects that Hernandez understood the advisory nature of the guidelines, as illustrated by the following excerpts of testimony:

> THE COURT: Okay. Do you fell like you understand everything that's in your plea agreement?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: All right, I need to make sure you understand a couple of things about it.
> So, a plea agreement means you've entered into a contract with the government. You've made some promises to the government and the government's made some promises to you, and you have to live up to your promises just like the government has. That means it's binding, but it's not binding on the Court, and here's what I mean by that. In paragraph number 5, it says, 'Pursuant to Rule 11(c)(1)(B), the United States and the defendant recommend the following sentencing guideline calculations, and they may object to or ague in favor of other calculations.' And it goes on to say, 'This recommendation does not bind the Court.'

> And there are four things that are going to be recommended at the time of the sentencing. The first is that the guidelines manual that's in effect at the time of your sentencing will be used to determine your range.
> The second is that you have a base offense level of 8.
> The third one is that your offense level is to be increased by 16 levels because you were previously deported for a felony that's a drug trafficking offense with a sentence over 13 months.
> And then finally, its agreed that you should be given acceptance of responsibility credit under the guidelines. But those four things are just recommendations that your lawyer and the government are going to make to the judge at your sentencing. The judge does not have to follow those recommendation. If those recommendations are made but are not followed, that would not giver you the right to withdraw your guilty plea. Do you understand that?
>
> THE DEFENDANT: Yes, Your Honor.

[R. 47, pp. 16-18].

The Government then addressed the plea agreement and stated: "Paragraph 5 sets forth the parties' agreement on four guideline issues. As your Honor has mentioned, those agreements do not bind the Court." [R. 47, p. 19]. In following the Court asked Hernandez:

> THE COURT: Oh. Okay. So the interpreter just gave you a description of the - - the plea agreement, a summary of the plea agreement. Was the summary that you just heard accurate?
>
> THE DEFENDANT: Yes, Your Honor.

[R. 47, p. 21].

> THE COURT: Now, the Court also has to consider the United States Sentencing Guidelines. *You've talked to*

|||
|---|---|
| | *your lawyer about the sentencing guidelines in your case, correct?* |
| THE DEFENDANT: | *Yes, Your Honor.* |
| THE COURT: | Okay. I'll explain how that process will work too. It used to be that the guidelines and the range of penalties they produced had to be followed by district judges, but the Supreme Court has changed that. *Now the guidelines are just a factor to consider, but don't have to be followed.* Do you understand that? |
| THE DEFENDANT: | *Yes, Your Honor.* |
| THE COURT: | The guidelines are based on two things, your criminal history and the offense level for your crime. Those combine to determine your range. That's just one factor for the Court to consider. The Court finds out about all the factors from the probation office. It will prepare a presentence report that'll be shown to you, your lawyer and the lawyer for the government. Both sides will have the chance to review it and file any objection that they have.<br><br>If necessary, Judge Thapar will hold a hearing, rule on any objection, and then determine the appropriate guideline range in your case. Do you understand that process? |
| THE DEFENDANT: | Yes, Your Honor. |
| THE COURT: | Do you understand that hasn't happened yet? |
| THE DEFENDANT: | Yes, Your Honor. |
| THE COURT: | Okay. So until that presentence report is finished, no one knows exactly what your guidelines range will be. Do you understand that? |
| THE DEFENDANT: | Yes, Your Honor. |
| THE COURT: | And if you've heard any estimates from your lawyer or anyone else about your guidelines range, those are just guesses. And if any guess |

>you've heard turns out to be wrong, that would not give you the right to withdraw your guilty plea. Do you understand that?
>
>THE DEFENDANT: Yes, Your Honor.
>
>THE COURT: The Court can impose a sentence that is more or less severe than what the guidelines say. All the factors I've described to you today will be used to determine your sentence. <u>The guidelines are just one factor.</u> Do you understand that?
>
>THE DEFENDANT: <u>Yes, Your Honor.</u>
>
>THE COURT: If the government makes recommendations about a range or a going up or down from the range, the Court don't [sic] have to follow that recommendation. Do you understand that?
>
>THE DEFENDANT: Yes, Your Honor.

[R. 47 at 29-31] (emphasis added).

Thus, Hernandez confirmed to the Court that he understood how his sentence would be calculated and that his final sentence would ultimately be determined by the judge after considering all the required statutory factors, including any guideline calculations. By confirming this understanding to the Court, he has evidenced his understanding of the advisory nature of the guidelines. This affirmation alone contradicts his argument.

However, without providing proof, Hernandez says that his attorney's failure to advise him that the guidelines were not mandatory discouraged him from presenting his mercy letter to the Court or speaking on his own behalf. [R. 52 at 4-5]. However, the record does not reflect or support his accusation that his attorney believed the guidelines to be mandatory. *See* [R. 47 at 24, line 7-13] (I did not make a specific promise or guarantee to [Hernandez] on what his sentence would be because I would have no idea what the final sentence is going to be; That's going to be decided by the Court after an investigation by probation).

**9** of 12

Likewise, in Hernandez's sentencing memorandum his attorney stated that "[t]he Court must consider the nature and circumstances of the offense and the defendant's history and characteristics." [R. 33 at 3]. In this same sentencing memorandum Hernandez's counsel addresses each of the factors contained in § 18 U.S.C. 3553(a), which are the factors the Court uses to determine the sentence to be imposed, in addition to the guidelines. *Id*. at 3-5. At the conclusion of the sentencing memorandum, Hernandez's counsel requests a sentence of not more than sixty-nine months of imprisonment. *Id*. at 5. This time of imprisonment was also the recommended sentence from the United States Probation Office, but was still well below the maximum possible sentence under the guidelines. [R. 40 at 1]. These actions evidence the attorney's understanding that the guidelines are not "mandatory," but are rather only a guide for the Judge to consider in determining his sentence.

Absent other evidence, Hernandez has failed to overcome the strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689. Hernandez has failed to show an error of constitutional magnitude or an error of fact or law that was so fundamental as to render the entire proceeding invalid. *Mallett*, 334 F.3d at 496-97. He has also failed to show the deficient performance or prejudice that is necessary for an ineffective assistance of counsel claim. *Strickland*, 466 U.S. at 687. Absent Hernandez's accusation, there is no proof or evidence provided by Hernandez to rebut the presumption that his attorney's conduct fell below reasonably professional assistance and there is no proof that the outcome would have been different. *Id*. 687-95. Therefore, this claim is baseless and inadequate to support habeas relief.

### V. MOTION FOR HEARING

Pursuant to Rule 4, Rules Governing § 2255 Proceedings, a motion to vacate may be summarily denied if it plainly appears from the face of the motion and any annexed exhibits that the movant is not entitled to relief. *Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003); *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986). In the alternative, "When a factual dispute arises in a § 2255 proceeding, an evidentiary hearing is required 'to determine the truth of the petitioner's claims.'" *Ray v. United States*, 721 F.3d 758, 761 (quoting *Valentine v. United States,* 488 F.3d 325, 333 (6th Cir. 2007)). The Sixth Circuit has observed that a § 2255 petitioner's "burden 'for establishing an entitlement to an evidentiary hearing is relatively light.'" *Smith*, 348 F.3d at 551 (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)). However, no hearing is required if the movant's allegations cannot be accepted as true because they are contradicted by the record, are inherently incredible, or are conclusions rather than statements of facts. *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999); *Peavy v. United States*, 31 F.3d 1341, 1345 (6th Cir. 1994).

In this case, the undersigned will recommend Hernandez's claims, found in his Motion to Vacate, be denied. Furthermore, there is no factual dispute necessitating an evidentiary hearing. Even though Hernandez's burden for establishing a right to an evidentiary hearing is light, it cannot be met because his allegation(s) clearly contradict the record and are conclusion rather than statements of fact. For these reasons, an evidentiary hearing is not necessary.

### VI. CONCLUSION

For the reasons set forth above, it is **RECOMMENDED** that Hernandez's Motion to Vacate [R. 52; R. 24; R. 24] be **DENIED**.

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing this Report and Recommendation. Particularized objections to this Report and Recommendation must be filed within fourteen (14) days from the date of service thereof or further appeal is waived. *United States v. Campbell*, 261 F.3d 628, 632 (6th Cir. 2001); *Thomas v. Ann*, 728 F.2d 813, 815 (6th Cir. 1984). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004); *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).

This the 28th day of January, 2019.



Signed By:
*Edward B. Atkins* EBA
United States Magistrate Judge